# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| **Dylan Pickett,** | Case No: 8:21-cv-2835 |
| *Plaintiff,* | |
| v. | Ad Damnum: $13455 + Atty Fees & Costs |
| **Applied Data Finance, LLC,** | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Dylan Pickett**, ("**Mr. Pickett**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **Applied Data Finance, LLC** ("**Applied Data**"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Pickett against Applied Data for violations of the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. §1961, *et. seq.* ("**RICO**"), the Florida *Civil Remedies for Criminal Practices Act*, Section 772.101, Florida Statutes, *et. seq.* ("**CRCPA**"), the *Florida Consumer Collection Practices Act*, Section 559.55, Florida Statutes *et. seq.* ("**FCCPA**"), along with *common law* unjust enrichment.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction for Plaintiff's RICO claims arises under 18 U.S.C. § 1965, and 28 U.S.C. § 1331, as RICO is a federal statute, and the relevant transactions were committed within Hillsborough County.

3. This Court has supplemental jurisdiction for Plaintiff's CRCPA and FCCPA claims under 28 U.S.C. § 1367.

4. The Defendant is subject to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes and Fed. R. Civ. P. 4(k).

5. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were committed and/ or caused by the Defendant within the Middle District of Florida.

## PARTIES

### Mr. Pickett

6. **Mr. Pickett** is a natural person residing in the City of Tampa, Hillsborough County, Florida, and a *Consumer* as defined by the FCCPA, Section 559.55(8), Florida Statutes.

### Applied Data

7. **Applied Data,** *doing business as* **Personify Financial,** is a Delaware limited liability company, with a principal business address of **15373 Innovation Dr., Suite 250, San Diego, CA 92128**.

8. Applied Data's Delaware registered agent is **Corporation Service Company, 251 Little Falls Dr., Wilmington, DE 19808.**

## FACTUAL ALLEGATIONS

### Applied Data Makes Illegal Loan to Mr. Pickett

9. On or about September 20, 2021, Mr. Pickett obtained a personal loan (the "**Loan**") from *www.personifyfinancial.com*, a website owned and operated by Applied Data. **SEE PLAINTIFF'S EXHIBIT A.**

10. The Loan carried an annual interest rate of 126.85%. *Id.*

11. The Loan had a stated principal amount of $4,200 and a finance charge of $11,869.92. *Id.*

12. Additionally, the Loan carried an "origination fee" of $210. This fee was disclosed in the section titled, "Itemization of the Amount Financed." *Id.*

13. Florida Statute § 687.02(1) renders loans made at interest rates over **18 percent** per year usurious.

14. Florida Statue § 687.071(3) renders loans made at interest rates over **45 percent** per year a felony.

15. Florida Statute 687.071(7) indicates that any such loan, and logically any debt stemming from such extension of credit, is void and unenforceable.

16. The Loan is therefore an *Unlawful Debt* per Florida Statute § 772.102(2) and 18 U.S.C. § 1961(6).

17. Any person who willfully makes such a loan, in addition to being subject to criminal sanctions, forfeits the right to collect payment for the loan, as such loans are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

18. The loan made by Applied Data to Mr. Pickett was thus *void ab initio*. *See Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966). *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

19. Florida law prohibits any recovery of the principal when loans are made at illegally-high interest rates. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

20. Applied Data reported the Loan to Trans Union, LLC, a nationwide **Credit Reporting Agency** ("**CRA**"), indicating a principal amount of $4,410.

21. Applied Data treated the $210 origination fee as part of the loan's principal.

22. The proceeds provided to Mr. Pickett concerning the Loan were wired to Mr. Pickett's bank account in Tampa through the **Automated Clearing House**

("**ACH**") network, and payments were debited via ACH from the same bank account.

23. The fact Mr. Pickett took the loan out from his home in Florida, had the proceeds wired to his bank account in Florida, and received collection correspondence in his home in Florida, establishes that the transaction occurred in Florida and is therefore subject to Florida law. *See California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960 (9th Cir. 2018).

24. Since the Loan was unlawful, Applied Data had no legal right to collect any interest or principal from Mr. Pickett.

25. Despite the Loan being illegal and the collection of interest at the rate of 126.85% being a felony in Florida, the Defendant collected installment payments from Mr. Pickett on the Loan.

26. Mr. Picket made at least $229.73 in payment of the Debt.

27. Despite such payment, within 60 days of taking out the $4,200 loan, the Defendant claimed $5,301.05 was now owed.

28. Due to the Defendant's repeated attempts to withdraw additional sums from Mr. Picket's account, Mr. Pickett incurred at least $100 of overdraft fees from his bank.

29. Prior to this, Mr. Pickett had taken out a loan of $1,995 from the Defendant, on or around October 11, 2019.

30. The 2019 loan had an interest rate of approximately 120% annually.

31. Mr. Pickett repaid the loan in full by November 2020 – 11 months later-- repaying at least $3,822.

**Applied Data Engages in Rent-a-Bank Scheme with First Electronic Bank**

32. Applied Data is a California-based "FinTech" business which makes loans to consumers at interest rates which are illegal in most states.

33. In states which render Applied Data's interest rates criminally usurious, including Florida, Applied Data "partners" with First Electronic Bank ("**FEB**"), a single-branch bank chartered in Utah.

34. Utah law does not prescribe a maximum legal interest rate.

35. Purportedly, FEB originates the loans, then assigns the loans to Applied Data for *servicing*.

36. Through a series of complex transactions, FEB sells the loan (or a vast majority of the interest of the loan) back to Applied, making Applied Data the true lender of loans issued by Applied / Personify Financial – including Mr. Pickett's Loan.

37. FEB had virtually nothing to do with the marketing, underwriting, servicing, or collection of Mr. Pickett's Loan, nor did FEB own the majority of the interest of the Loan for any substantial amount of time.

38. FEB simply receives a guaranteed fee, per loan, for renting its name and status as an FDIC-insured bank to Applied Data.

39. At no point was FEB the true lender of Mr. Pickett's loan, nor was any capital belonging to FEB at risk.

40. Further, Applied Date's website, PersonifyFinancial.com, notes the content is "Copyright © 2021, Applied Data Finance, LLC D/B/A Personify Financial, All rights reserved." **SEE PLAINTIFF'S EXHIBIT B.**

41. As previously mentioned, Applied Data reported a tradeline concerning the Loan to Trans Union, indicating the lender was *Applied Data*.

42. Personify Finance is also a registered trademark of *Applied Data*. **SEE PLAINTIFF'S EXHIBIT C.**

43. The phone number provided by Applied Data in its report concerning the loan to Trans Union was 888-578-9546, which is the main phone number for Applied Data. *Id.*

44. Applied Data frequently obtains consumer reports as part of its underwriting process. The record of inquiries recorded by the relevant CRAs show *Applied Data's* name and telephone number, without any reference to FEB.

45. Applied Data clearly held the predominant economic interest in loans made to consumers, including Mr. Pickett.

46. Applied Data, not FEB, is therefore the true lender of the Loan. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018); see also, e.g., *State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011); Easter v. Am. W. Fin., 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

47. *Rent-a-bank* schemes like the one engaged in between Applied Data and FEB allow predatory lenders like Applied Data to make loans to consumers in states with prohibit usury, including Florida, with a veil of legal cover.

48. Applied Data offered FEB a deal in which FEB literally could not lose – it gets paid roughly 5% of the value of the loan as its fee, irrespective of if the consumer ever repays the loan. Applied Data indemnifies FEB against any losses and, in a complex series of transaction utilizing several different limited liability companies, money "loaned" by FEB is immediately repaid to it by Applied Data, who is then assigned the loan and acquires servicing rights for the loan.

49. However, Applied Data, a non-bank assignee (and true practical originator) of the Loan, had no legal ability to collect the assessed interest. *See. Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015).

50. Florida's "usury statutes show clear legislative intent to prevent accomplishment of a usurious scheme by indirection, and the concealment of the needle of usury in a haystack of subterfuge." *Pinchuck vs. Canzoneri*, 920 So. 2d 713, 715-16, (Fla. 4th DCA, 2006).

51. Applied Data knows that its loans charge illegal interest rates in a majority of states, including Florida.

52. Indeed, Applied Data's business practices have been established to allow it to make loans under its own name in those states which do not prohibit usurious interest rates on consumer loans.

53. Applied Data receives a large portion of its funding from Victory Park Capital Advisors, LLC ("**Victory Park Capital**"), a hedge fund with $2.75 billion under management.

54. Victory Park Capital makes significant investments in online lenders with interest rates exceeding 100% annually, including Elevate Credit, Inc. and Deinde Group, LLC.

55. Previously, Victory Park Capital invested in Think Finance, which utilized the investment to fund loans made through Plain Green Loans –

purportedly operated by a remote Montana Native American tribe. Plain Green Loans had interest rates exceeding 500% annually.

56. After multiple lawsuits by state and federal regulatory agencies alleging Think Finance and Victory Park Capital had engaged in racketeering and a rent-a-*tribe* scheme, Think Finance filed for bankruptcy. Its president, Kenneth Rees, became CEO of Elevate Credit, Inc., which makes loans at triple-digit interest rates through a rent-a-bank scheme with a small Utah bank. Victory Park Capital made a substantial investment in Elevate Credit, Inc. as well.

57. Mr. Pickett has hired the aforementioned law firm to represent him in this matter and has assigned his right to recovery of fees and costs to the firm.

## COUNT I
## <u>VIOLATIONS OF 18 U.S.C § 1962</u>

58. Mr. Pickett incorporates Paragraphs 1 – 57 as if fully restated herein.

59. Applied Data violated **18 U.S.C §§ 1962(a) & 1962(b),** when it received proceeds directly from the collection of an unlawful debt – Mr. Pickett's Loan – and utilized such proceeds to maintain its ongoing lending enterprise with FEB, Victory Park Capital, and other persons, natural and otherwise.

60. Applied Data violated **18 U.S.C §§ 1962(c)**, when it participated directly in an enterprise with FEB, Victory Park Capital, and other persons, natural and otherwise, through the collection of an unlawful debt – Mr. Pickett's Loan.

61. Applied Data violated **18 U.S.C §§ 1962(d)**, when it conspired with FEB, Victory Park Capital, and other persons, natural and otherwise to collect an unlawful debt, Mr. Pickett's Loan, and to use funds collected in furtherance of its ongoing enterprise with FEB and Victory Park Capital.

62. Applied Data took numerous actions in furtherance of this conspiracy, including the collection of Mr. Pickett's loan and reporting it to the CRAs.

63. Applied Data issued its loan to Mr. Pickett using the internet and proceeded to collect it via ACH, reporting it to Mr. Pickett's credit – over the internet. Applied Data is headquartered in California, and thus acted across state lines into Florida when it issued and collected the Loan. The conduct at issue thus affected interstate commerce.

64. Applied Data's intent is evidenced by its use of a rent-a-bank scheme in an attempt to avoid state usury laws and the fact that it lends under its own name, and not FEB's, in states where its interest rates are legal.

**WHEREFORE,** Mr. Pickett respectfully requests this Honorable Court enter judgment against Applied Data, ordering:

a. Threefold actual damages of at least **$4,151.73** (for a total of, **$12,455.19** as of the date of this filing), or, in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to 18 U.S.C § 1964(c);

b.  Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c);

c.  Any other relief this Court deems equitable and proper under the circumstances.

## COUNT II
## VIOLATIONS OF THE CRCPA

65. Mr. Pickett incorporates Paragraphs 1 – 57 as if fully restated herein.

66. Applied Data violated **Florida Statutes §§ 772.103(1) & 772.103(2),** when it received proceeds directly from the collection of an unlawful debt – Mr. Pickett's Loan – and utilized such proceeds to maintain its ongoing lending enterprise with FEB.

67. Applied Data violated **Florida Statutes § 772.103(3),** when it participated directly in an enterprise with FEB, through the collection of an unlawful debt – Mr. Pickett's Loan.

68. Applied Data violated **Florida Statutes § 772.103(4),** when it conspired with FEB to collect an unlawful debt, Mr. Pickett's Loan, and to use any funds collected in furtherance of its ongoing enterprise with FEB.

69. Applied Data took numerous actions in furtherance of this conspiracy, including the collection of Mr. Pickett's loan and reporting it to the CRAs.

70. Applied Data's intent is evidenced by its use of a rent-a-bank scheme in an attempt to avoid state usury laws and the fact that it lends under its own name, and not FEB's, in states where its interest rates are legal.

**WHEREFORE,** Mr. Pickett respectfully requests this Honorable Court enter judgment against Applied Data, ordering:

a. Threefold actual damages of at least **$4,151.73** (for a total of, **$12,455.19** as of the date of this filing) or, in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to Florida Statute 772.104(1);

b. Reasonable costs and attorneys' fees pursuant to pursuant to Florida Statute 772.104(1);

c. An injunction of Estoppel against Applied Data from engaging in any further action in violation of Florida law, pursuant to Florida Statute 772.14; and,

d. Any other relief this Court deems equitable and proper under the circumstances.

## COUNT III
## <u>UNJUST ENRICHMENT</u>

71. Mr. Pickett adopts and incorporates paragraphs 1 – 57 as if fully stated herein.

72. Mr. Pickett conferred a benefit to Applied Data in the form of payments totaling of $4,051.73 to Applied Data.

73. Applied Data had no legal right to the collection of these payments and was therefore unjustly enriched.

74. <u>Any</u> amount repaid on an illegal, usurious debt deemed void *ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

75. Applied Data knew that it had no legal right to the collection of these payments, as evidenced by its business model, but choose to accept the funds from Mr. Pickett regardless.

**WHEREFORE,** Mr. Pickett respectfully requests this Honorable Court enter judgment against Applied Data, and for him, for:

    a.    Actual damages for the payments conferred to Applied Data pursuant to the void loans; and,

    b.    Any other relief this Court deems equitable and proper under the circumstances.

## COUNT IV
## VIOLATIONS OF THE FCCPA

76. Mr. Pickett adopts and incorporates paragraphs 1 – 57 as if fully restated herein.

77. Applied Data violated Section **559.72(9)**, Florida Statutes, when it asserted rights which do not exist, and which Applied Data knew did not exist, specifically the right to collect an unlawful debt requiring nearly 128.65% in annual interest.

78. Applied Data violated Section **559.72(9)**, Florida Statutes, when it asserted a debt was legitimate, when it was not, specifically the Personify loan made at 128.65% annual interest. Under Florida Law, such Loan was void *ab initio* and unenforceable against Mr. Pickett.

79. Applied Data's actions were willful and intentional in that they were part of a strategy designed to make and collect illegal loans.

80. Applied Data's knowledge of the illegality of its loans is evident from its choice to conduct business under a "rent-a-bank" scheme in Florida, as well as the fact that Applied Data varies the stated lender based on the laws of each state.

**WHEREFORE,** Mr. Pickett respectfully requests this Honorable Court enter judgment against Applied Data for:

    a. Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.  Actual damages of at least **$4,151.73** pursuant to Section 559.77(2), Florida Statutes;

c.  Injunctive relief preventing KMD from attempting to collect the alleged debt from Mr. Pickett pursuant to Section 559.77(2), Florida Statutes;

d.  Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

e.  Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Pickett hereby demands a jury trial on all issues so triable.

Respectfully submitted on December 6, 2021 by:

**SERAPH LEGAL, P. A.**

/s/ *Philip R. Goldberg*
Philip R. Goldberg, Esq., Florida Bar # 105940
PGoldberg@SeraphLegal.com

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq., Florida Bar # 119168
BGeiger@seraphlegal.com

Seraph Legal, P.A.
1614 N. 19th St.
Tampa, FL 33605
(813) 567-1230
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

A     Mr. Pickett's Loan Agreement with Applied Data, January 2, 2019 - Excerpt
B     Applied Data's Home Page, via www.Applied DataFinancial.com – Excerpt
C     Personify Financial Trademark